**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| SUBLIME SYSTEMS, INC., *Plaintiff*, v. UNITED STATES, *Defendant*. | Case No. 26-458-C |

**JOINT PRELIMINARY STATUS REPORT**

Plaintiff, Sublime Systems, Inc. and Defendant, the United States, respectfully submit this Joint Preliminary Status Report pursuant to Section III of Appendix A of the Rules of the United States Court of Federal Claims (RCFC).

**<u>Appendix A Questions</u>**

Pursuant to RCFC Appendix A, ¶ 4, the parties provide answers to the following questions.

**(a) Does the Court have jurisdiction over the action?**

Plaintiff alleges that the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1491(a). Defendant is not aware of a basis upon which to challenge jurisdiction at this time.

**(b) Should the case be consolidated with any other case?**

The parties agree there are no other pending cases with which consolidation would be appropriate.

**(c) Should trial of liability and damages be bifurcated?**

The parties do not believe the trial of liability and damages should be bifurcated.

**(d) Should further proceedings in the case be deferred pending consideration of another case before this court or any other tribunal?**

The parties do not believe that further proceedings in this case should be deferred pending consideration of another case before this Court or any other tribunal.

**(e) In cases other than tax refund actions, will a remand or suspension be brought?**

Neither party believes that remand or suspension will be sought.

**(f) Will additional parties be joined?**

Neither party plans to seek joinder of additional parties.

**(g) Does either party intend to file a motion pursuant to RCFC 12(b), 12(c), or 56, and, if so, what is the schedule for the intended filing?**

**Plaintiff's Position**

Defendant has already filed a motion to dismiss under RCFC 12(b), which the Court denied after hearing oral argument on the motion on August 12, 2026.

As explained below, Sublime is requesting expedited trial scheduling pursuant to Section III(j) of Appendix A of this Court's rules and this Court's inherent authority to manage its docket and ensure "the just, speedy, and inexpensive determination" of this action. RCFC 1. Sublime anticipates that this case can be resolved efficiently by proceeding to a 90-day period of discovery and then trial. Given the likelihood that there will be genuine issues of material fact, particularly on the issue of damages, Sublime does not believe that summary judgment briefing would facilitate the prompt resolution of this matter.

**Defendant's Position**

Defendant believes that a motion under RCFC 12(c) or RCFC 56 may resolve outstanding legal disputes between the parties that do not implicate genuine issues of material

fact. The appropriateness and timing of any such motion will depend on the issues that arise during fact discovery, and Defendant reserves the right to file any such motion.

**(h) What are the relevant factual and legal issues?**

This case concerns the Department of Energy's termination of a cooperative agreement with Sublime Systems, a technology start-up pioneering a zero-carbon emissions method of manufacturing cement.

**Plaintiff's Position**

Sublime brings the following legal claims:

1) DOE breached the express terms of its contract with Sublime by (i) terminating the contract on grounds that were not contractual bases upon which DOE could terminate, (ii) terminating the contract on the ground that the project no longer effectuates program goals or agency priorities "to the extent authorized by law," when Sublime the termination was not "authorized by law" because it violated the Inflation Reduction Act and Administrative Procedure Act, (iii) terminating the contract based on changed DOE goals and priorities, rather than the program goals and agency priorities that existed at the time DOE issued the award, (iv) terminating the contract without any individualized determination, (v) terminating the contract based on a change in goals and priorities that conflicted with Congress's goals and priorities in requiring the agency to spend the relevant funds, and (vi) terminating the contract when the project did, in fact, effectuate DOE's goals and priorities.
2) DOE breached the implied covenant of good faith and fair dealing, including by terminating the contract in a manner that was arbitrary, capricious, and contrary to the reasonable expectations of Sublime in entering into the contract.

3) DOE abused its discretion to terminate the contract, including by terminating the contract in a manner that was arbitrary, capricious, and wholly unreasonable and irrational.
4) DOE terminated Sublime's contract in bad faith because it was grounded in animus toward awards the class of grantees of which Sublime was a member; namely, grantees that received awards from the prior administration, and in particular perceived "green" projects seeking to reduce greenhouse gas emissions.

The relevant factual issues include the reasons DOE terminated the award, the process surrounding that termination, details around DOE's goals and priorities, and the damages that Sublime has suffered as a result of the termination.

**Defendant's Position**

Defendant contends that the issues in this case primarily relate to the DOE's termination rights under the cooperative agreement with Plaintiff, and whether DOE's termination decision amounts to a breach of the express terms of the settlement agreement, rather than the exercise of DOE's contractual termination right. *See generally* ECF No. 11, Mot. to Dismiss.

DOE terminated the cooperative agreement only months into Plaintiff's performance. By virtue of termination, Sublime may be entitled to contractual closeout costs under the agreement (if Sublime were to ever submit any such costs for reimbursement that are otherwise allowable and allocable). Despite the cooperative agreement's termination in the first of four budget periods, Sublime further argues that it is entitled to extensive breach of contract-styled costs associated with the termination, to include alleged loss of income; alleged lost funding from DOE, third-party sources, and tax credits; reliance damages; delay damages; and loss of company value. *See* Compl. ¶¶ 59-68. Thus, the articulation, calculation, and evidence

supporting Sublime's damages theories are expected to be a focus of the Government's discovery and defense.

**(i) What is the likelihood of settlement? Is alternative dispute resolution contemplated?**

The parties have discussed settlement but have thus far been unable to reach agreement. The parties will continue to explore settlement as the case progresses. The parties do not currently plan on proceeding to Alternative Dispute Resolution.

**(j) Do the parties anticipate proceeding to trial? Does either party, or do the parties jointly, request expedited trial scheduling and, if so, why? A request for expedited trial scheduling is generally appropriate when the parties anticipate that discovery, if any, can be completed within a 90-day period, the case can be tried within 3 days, no dispositive motion is anticipated, and a bench ruling is sought. The requested place of trial shall be stated. Before such a request is made, the parties shall confer specifically on this subject.**

Yes, should this case not be resolved by settlement or dispositive motion, the parties anticipate proceeding to trial in Washington, D.C. at the U.S. Court of Federal Claims.

**<u>Plaintiff's Position</u>**

Sublime requests expedited trial scheduling pursuant to Section III(j) of Appendix A and this Court's inherent authority to manage its docket and ensure "the just, speedy, and inexpensive determination" of this action. RCFC 1. As set forth in Sublime's motion to expedite proceedings, Sublime will face existential harm if this matter is not expedited, given the devastating and existential financial impact that DOE's unlawful termination has had on Sublime. Dkt. 15 at 1; *see also* Dkt. 15-1 (Declaration of Sublime CEO Robert Davies). Defendant's proposed schedule—calling for 9 months of fact discovery, followed by an unspecified period of expert discovery, followed by trial at some unknown date years into the future—is patently unreasonable and inequitable in the circumstances. *See* Dkt. 15-1 ¶ 14 (providing relevant dates).

Consistent with Section III(j) of Appendix A, Sublime anticipates that discovery can be completed within 90 days. Discovery in this case will not be overly complex and will focus on the factual circumstances surrounding the termination in May 2025. Sublime anticipates serving a limited set of document requests, interrogatories, and requests for admission, followed by a handful of depositions. Expert discovery on the issue of damages, to the extent any is necessary, can be completed simultaneously with fact discovery.

Defendant asserts that fact discovery will require an extended period and expert discovery must be staggered to occur after it because Sublime has not yet produced documentation to substantiate the damages it seeks. But Sublime anticipates being able to produce all or nearly all documentation supporting its damages by September 9, 2026, the agreed-upon date for initial disclosures, and will send the documents on a rolling basis between now and then.

Defendant also cites counsel's expected workload in other cases, including two expected trials in late January 2027 and February-March 2027, but those cases are no reason Defendants cannot go to trial here in December 2026 as Sublime requests, and more importantly the government's staffing decisions cannot be a basis for denying Sublime its timely day in court. If Defendant's attorney is busy, the Department of Justice can add additional counsel to this matter.

Sublime does not believe that summary judgment briefing would be constructive given the likelihood that there will be genuine issues of material fact, as relevant to all four counts of the complaint and damages. Defendant appears to anticipate renewing the damages arguments from its motion to dismiss in a summary judgment or Rule 12(c) motion, but any such motion is doomed to the same fate, as the Federal Circuit has held that the Court of Federal Claims should not grant summary judgment on damages issues until after adjudicating whether there has been a

breach of contract. *San Juan City Coll., Inc. v. United States*, 391 F.3d 1357, 1362 (Fed. Cir. 2004).

Sublime believes that a trial in this case can be completed in three days, making it a suitable candidate for expedited trial scheduling. Sublime is also amenable to receiving a bench ruling, if doing so would facilitate prompt resolution of this case.

Sublime also requests that the Court dispense with the preliminary scheduling conference in the interest of justice and judicial economy because the Court is aware of the issues in this case after its ruling denying Defendant's motion to dismiss. However, if the Court believes the preliminary scheduling conference is warranted, Sublime is amenable to the September 14-18, 2026 date range that Defendant proposes.

**<u>Defendant's Position</u>**

Defendant respectfully requests that the Court enter a schedule reflecting a nine-month period for fact discovery, with a subsequent deadline one month after the close of fact discovery for the parties to identify prospective expert testimony, and the filing of a joint status report setting forth the prospective case schedule within two weeks of the identification of expert testimony. This schedule is necessary based on the allegations and theories that Plaintiff has set forth in the complaint. For example, Plaintiff seeks to include alleged loss of income; alleged lost funding from DOE, third-party sources, and tax credits; reliance damages; delay damages; and loss of company value. *See* Compl. ¶¶ 59-68. Although Plaintiff does not specify its damages calculations in its complaint—outside of the general 2-billion-dollar amount claimed, *see* ECF No. 1-1—Plaintiff's allegations suggest that it is seeking tens, if not hundreds, of millions of dollars in damages. *See id*. Based on these damages theories alone, Plaintiff's suggestion that discovery will not be overly complex, or that expert discovery may not even be

necessary, seems implausible. Given the myriad damages theories alone, Defendant reasonably proposes that the parties require nine months for fact discovery, along with subsequent expert analysis that will require further time for development and discovery. Because the scope of expert testimony may be influenced by the development of this case through fact discovery, Defendant suggests that the parties subsequently advise the Court of the prospective expert discovery schedule shortly following the close of fact discovery.

Plaintiff's desired expedited schedule of 90 days for both fact and expert discovery is impracticable and prejudicial to the United States, and will restrict Defendant's ability to inquire into Plaintiff's reported costs and/or damages. Defendant lacks insight into even the most basic facts about the support for Plaintiff's claims. Yet Plaintiff seeks to require that the United States fully investigate Plaintiff's theories within a mere three months—an unprecedented period of time for a termination with costs of Plaintiff's purported scale. There are many issues with Plaintiff's proposed schedule, including that it provides less than two months to submit all written discovery, though Defendant expects to have to serve sequential layers of written discovery to investigate the support for Plaintiff's many damages theories. And Plaintiff proposes that the exchange of fact discovery occur concurrently with the development of expert testimony, despite Defendant not yet learning what type and extent of expert testimony may be appropriate.[1] Moreover, Plaintiff's proposed schedule provides no cushion time should any

[1] For example, Plaintiff claims damages in the form of "Loss of Company Value." Compl. at 17. Any analysis may require substantial expert development and inquiry into Plaintiff's manufacturing industry, capital investment projects, or general damages and accounting expertise. But as of today Defendant has no knowledge of the facts or legal instruments relevant to this analysis, and thus cannot even begin the time-consuming process for selecting experts—not to mention the subsequent time needed for any expert(s) to analyze the issues and draft a report.

dispute arise between the parties, *e.g.*, a motion for protective order, and any such dispute would immediately obstruct the schedule and require an amendment.

Practically, Plaintiff's proposed schedule also cannot be accomplished by Defendant's counsel given preexisting case obligations. Undersigned counsel is currently scheduled for two trials at the start of 2027, *Hamilton Square v. United States*, Fed. Cl. No. 20-1285 (trial to begin in California on January 20, 2027), and *AAECON General Contracting, LLC v. United States*, Fed. Cl. No. 24-1989 (which Senior Judge Bruggink directed in a status conference on July 30, 2026 to be scheduled in February or March of 2027), which will require considerable time investment during both the beginning of 2027 as well as the remainder of 2026. In another case assigned to Defendant's counsel, *Grand Enterprises, LLC, v. United States*, Fed. Cl. No. 21-1855, the Court issued a summary judgment decision on August 14, 2026, which now necessitates active negotiations and ultimately trial scheduling across this same period. And, in addition to counsel's many other filing deadlines and discovery obligations, the fact discovery period in *United States v. Repwire, LLC*, CIT No. 24-173, ends on December 15, 2026, shortly after Plaintiff's November 24, 2026 proposed end of fact discovery, and projects to be especially time-consuming and contentious.

Finally, given the numerous substantive legal issues in this dispute, Defendant does not at this time believe that a bench ruling, as Plaintiff suggests, without post-trial briefing, would be the appropriate vehicle for the Court to render its decision.

**(k) Are there special issues regarding electronic case management needs?**

The parties are not aware of special issues regarding electronic case management at this time.

**(l) Is there other information of which the court should be aware at this time?**

Plaintiff and Defendant have been unable to reach an agreed upon schedule in this matter, and instead reflect differing scheduling perspectives below.

**Plaintiffs' Proposed Schedule**

| Event | Proposed Completion Date |
|---|---|
| Opening of Fact Discovery | On the date the Court enters its Scheduling Order |
| Initial Disclosures | September 9, 2026 |
| Last Date to Serve Discovery Requests | October 23, 2026 |
| Parties serve expert report(s) | October 23, 2026 |
| Rebuttal expert report(s) due | November 13, 2026 |
| Close of Discovery | November 24, 2026 |
| Parties exchange trial exhibits and witnesses | December 4, 2026 |
| Trial | At Court's earliest available date after December 4, 2026 |

**Defendant's Proposed Schedule**

| Event | Proposed Completion Date |
|---|---|
| Initial Disclosures | September 9, 2026 |
| Scheduling Conference at the Court's Convenience | September 14-18, 2026 |
| Close of Fact Discovery | May 26, 2027 |
| Deadline to Identify Prospective Expert Testimony Subjects to Opposing Party | June 28, 2027 |
| Filing of a Joint Status Report to Reflect Expert Discovery and Prospective Case Schedule | July 12, 2027 |

Dated: August 26, 2026

Respectfully submitted,

/s/ Daniel F. Jacobson

Daniel F. Jacobson
John Robinson
Brian C. Rosen-Shaud
JACOBSON LAWYERS GROUP PLLC
5100 Wisconsin Ave. NW, Suite 301
Washington, DC 20016
Tel: (301) 823-1148

dan@jacobsonlawyersgroup.com
john@jacobsonlawyersgroup.com
brian@jacobsonlawyersgroup.com

*Counsel for Plaintiff*

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

CORINNE A. NIOSI
Assistant Director

/s/ Matthew D. Lewis
MATTHEW D. LEWIS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
(202) 880-6321
matthew.lewis@usdoj.gov

*Counsel for Defendant*