**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

SUBLIME SYSTEMS, INC.,

*Plaintiff*,

v.

UNITED STATES OF AMERICA,

*Defendant*.

Case No. 26-458-C

**JOINT STATUS REPORT**

Pursuant to the Court's November 16, 2026 order (Dkt. No. 33), Plaintiff, Sublime Systems, Inc., and Defendant, the United States, respectfully submit this joint status report regarding a proposed schedule for the government's production of documents. The parties have been unable to agree to a schedule for productions, and accordingly each propose the following:

Sublime proposes that the government complete its production of documents in the custody of the Department of Energy (DOE) by December 11, 2026. Sublime further proposes that the government complete its production of documents in the custody of the U.S. DOGE Service (DOGE) and the Office of Management and Budget (OMB) by January 8, 2027.

Defendant proposes the following case schedule, based upon the Government's current information regarding the current collection of DOE documents and the need to further investigate the collection and production of documents from OMB and DOGE. We respectfully submit that our proposed schedule, reflecting sequencing of discovery, is consistent with Rule 26 of the Rules of the United States Court of Federal Claims (RCFC), which aligns with Rule 26 of the Federal Rules of Civil Procedure. "Rule 26 vests the trial judge with broad discretion to

tailor discovery narrowly and *to dictate the sequence of discovery*." *Crawford-El v. Britton*, 523 U.S. 574, 599 (1998) (emphasis added) (citing Rule 26(d)). That broad discretion into sequencing discovery should be read consistent with the boundaries of proportionality set out in Rule 26(b)(1). *See Kan. City Power & Light Co. v. United States*, 132 Fed. Cl. 28, 31 (2017) (citations omitted).

| Date | Proposed action |
|---|---|
| **December 11, 2026** | Continue rolling DOE document productions.<br>Defendant to submit a progress report detailing documents reviewed and produced.<br>Defendant to incorporate six additional contract reviewers. |
| **January 15, 2027** | Continue expanded rolling productions of DOE documents with additional reviewers.<br>Substantially complete productions from OMB *Wright* collection that specifically reference "Sublime." |
| **February 26, 2027** | Substantially complete DOE's production of responsive, nonprivileged documents from the identified review population. |

Defendant additionally requests modification of the existing February 9, 2027 discovery cutoff under RCFC 16(b)(4), to February 26, 2027.

* * *

The parties' respective positions are set forth below.

**Sublime's Position**

Despite the Court's directives at the November 16 conference, the government's refusal to comply with its discovery obligations and the court's orders continues unabated. At the parties' meet and confer yesterday, the government refused to offer *any* proposed schedule for completing productions. The government suggested it would be impossible to complete productions from DOE, OMB, or DOGE within the period of fact discovery the Court has set—even though the government has not even run searches of DOGE and OMB or sought to narrow its preliminary search of DOE to determine the scope of documents at issue. The government

asserted that it would not produce certain documents regarding Sublime's grant post-dating May 2025, despite the Court making clear that the government must do so. And the government interrogated Plaintiff's counsel to justify production of materials related to the October 2025 termination, with government counsel insisting that such records are not relevant to this proceeding, no matter that the Court already held otherwise.

It was not until 10:30 p.m. tonight that the government sent Sublime its draft of this joint status report, which disclosed for the first time the government's proposed schedule—including altering the court-ordered deadline for completing fact discovery—and ten pages of argument in support of the government's positions. Sublime thus has had barely an hour to review and respond to the government's proposal and arguments.

Below, Sublime explains its proposed production schedule, responds as best as Sublime can to the government's proposal and arguments in the very limited time Sublime has had, and respectfully requests further direction from the Court to the government on certain issues. As an overarching point, however, Sublime notes that the government's restrictive proposals and claims of infeasibility hold no water with respect to three categories of records that have been in dispute: (1) DOE records post-dating May 2025; (2) OMB records; and (3) DOGE records. For all three categories, the government need only run a search for "Sublime" and see how many responsive records are returned. For OMB and DOGE in particular, both are small entities whose employees' records may be searched for references to "Sublime" in a single search. If the number of responsive records is limited, as one would expect, there is no need for the delays and cumbersome proposals that the government puts forward.

**1. DOE Documents**

Sublime proposes that the government produce responsive documents in DOE's possession by December 11, 2026, which is the deadline that the Court proposed at the November 16 status conference. *See* 11/16/2026 Hr'g Tr. 6:15–22, ECF No. 35 ("I'd like you to continue to produce them on a rolling basis with a cutoff of December 11, 2026."). Defendant stated at the parties' meet and confer that it could not comply with such a deadline given the number of documents that appear to be potentially responsive based on its initial search. As Sublime explained at the meet and confer, Sublime is willing to work with Defendant to come up with an agreed-upon set of search terms to narrow the universe of potentially responsive documents. To that end, Sublime has requested that Defendant provide it with its list of search terms, custodians, and "hit report" showing the number of documents that hit on a particular term.

It is imperative, however, that the Court set a deadline for completion of production by mid-December to ensure that the parties remain on track to complete fact discovery by February 9. The government effectively ignored Sublime's document requests for two months after the requests were made, and the government should not now be able to bootstrap that inaction to extend the discovery period to Sublime's detriment. Sublime accordingly requests that the Court order Defendant to complete production of DOE documents by December 11, as the Court proposed at the status conference.

The Court should reject Defendant's proposed schedule, under which it would not even "substantially complete" its document production until February 26, 2027, and all fact discovery would close that same date. Defendants did not raise these requests at the parties' meet-and-confer and instead raised them the first time this evening. While the Court noted that it need not

"necessarily stick to the December 11th deadline for *all* of the documents to be produced," the Court recognized that productions should be completed "within a reasonable time thereafter." Hr'g Tr. 18:5-15 (emphasis added). The lengthy extension that the government requests would significantly prejudice Sublime for all the reasons Sublime has explained repeatedly in its motion to expedite proceedings and in the parties' prior status reports. *See, e.g.*, ECF Nos. 15, 31, 32. Under Defendant's proposal, moreover, Defendant would not even complete its document production until February 26—the same day it proposes for the close of fact discovery—leaving no time for Sublime to conduct depositions in which it can rely on the documents. In reality, moving the deadline to "substantially complete" document production to February 26 would mean that fact discovery as a whole could not close until much later.

**2. DOGE and OMB documents**

Sublime also proposes that the government produce responsive DOGE and OMB documents by January 8, 2027. Sublime offers this later date for DOGE and OMB documents as an accommodation to the government given the constraints it has cited. As a further accommodation, Sublime has agreed that, as to DOGE and OMB documents, Defendant need only search for documents that contain the word "Sublime," which should substantially narrow the universe of potentially responsive documents. With this limitation, there is no reason that the government cannot produce responsive DOGE and OMB records by January 8. As mentioned, although the government has expressed concerns about the feasibility about meeting such a deadline, those concerns ring hollow where the government has not even run searches of DOGE and OMB records for reference to "Sublime" to determine the scope of responsive records.

The Court should reject Defendants' various proposals to impose complicated processes and restrictions on their searches of OMB and DOGE. Regarding OMB, Defendants suggest that

they wait until discovery in an entirely different case (*Wright*) with different plaintiffs (States) about different awards is produced, and then the government will search *within* the universe of those records. There is no basis for such a delayed and complicated process. OMB must conduct a search for discovery as relevant to *this* case, and in particular simply search for "Sublime."

As for DOGE, as Sublime informed the government during the meet and confer, discovery has been straightforwardly obtained from the U.S. DOGE Service within the Executive Office of the President in several other cases, including in *American Council of Learned Societies v. McDonald*, No. 1:25-cv-03657, (S.D.N.Y.). That case concerned the National Endowment for the Humanities, and contrary to the government's assertion below, the plaintiffs did not "[seek] productions from specific DOGE-affiliated personnel," at least with respect to the U.S. DOGE Service. The plaintiffs (who were represented by Sublime's counsel here) sought discovery about the NEH termination process from the U.S. DOGE Service as a whole, and the U.S. DOGE Service devised searches and produced responsive records. The same should be done here, as this Court has already ordered.

**3. Documents Postdating May 31, 2025**

In the parties' November 9 joint status report, Sublime raised three issues regarding the government's objections and responses to Sublime's Requests for Production. *See* ECF No. 32 at 2–3. The second issue was that "[f]or documents that do mention Sublime by name, the government [stated that it] would cut off its search at May 31, 2025, even though Sublime's administrative appeal and conversations with DOE about possibly reinstating the award lasted well beyond then." *Id.* at 2.

At the recent status conference, the Court went through each of the three issues raised by Sublime in the JSR. Regarding the second issue, the Court stated: "Second, I also agree that the

search should not be cut off at May 2025 but should also include documents that were prepared later[,] at least [as to] those documents that address Sublime's grant or the mass termination action." Hr'g Tr. 8:5–9. The Court thus agreed with Sublime's position that the government must run searches beyond May 2025 for any records that mention Sublime by name, at least in reference to its grant, including records regarding Sublime's administrative appeal and discussions on reinstating the award.

The Court's written order stated that Defendant "must also produce documents relevant to the October 2025 terminations that mention Sublime," but did not expressly state that Defendant must also produce other responsive documents that postdate May 31, 2025 that mention Sublime, such as documents relating to Sublime's appeal or potential reinstatement. ECF No. 33. Sublime thus asked Defendant's counsel to confirm, consistent with this Court's direction at the status conference, that Defendant would produce all responsive documents that mention Sublime postdating May 31, 2025. But counsel stated that Defendant would produce only such documents that were relevant to the October 2025 terminations, and would not produce any records relating to the administrative appeal, discussions on reinstating Sublime's award, or anything else related to Sublime's grant.

Earlier today, Sublime provided Defendant with a copy of the hearing transcript and asked government counsel whether counsel would still maintain the position that Defendant need not search for documents addressing Sublime's administrative appeal or reinstatement post-May 31 in light of the Court's rulings at the November 16 hearing. Government counsel did not respond. In Defendant's position statement below, however, the government does not appear to contest that the Court ordered Defendant to collect and produce such documents at the November 16 hearing. Sublime respectfully requests that the Court confirm that Defendant must produce all

responsive documents that postdate May 31, 2025 that mention Sublime by name, as it stated at the status conference.

**Defendant's Position**

Defendant opposes Plaintiff's proposed December 11, 2026 deadline for completion of the DOE's document production and January 8, 2027 deadline for completion of productions from OMB and DOGE. As explained below in more detail, those deadlines are not reasonably achievable given the substantial volume of records that DOE had identified through its completed electronic searches, the additional discovery obligations addressed at the November 16 status conference, and the time necessary to conduct an appropriate responsiveness, privilege, and confidentiality review.

Instead, Defendant proposes that the Court set a schedule that allows DOE to continue producing responsive, nonprivileged documents on a rolling basis, with substantial completion of DOE's production by **February 26, 2027**. Again, in accordance with Rule 16 and Rule 26, Defendant further proposes a separate, phased schedule for OMB and DOGE records, including the completion of the production of OMB documents from the *Wright* case – discussed below – that reference "Sublime" by January 15, 2026.

Additionally, contrary to Plaintiff's characterization, and as discussed below, Defendant has not refused to comply with its discovery obligations. DOE has informed us that it has undertaken extensive electronic searches, identified a substantial population of potentially responsive records, commenced rolling production, and initiated efforts to obtain additional contract-review resources. Although the Court directed the parties to confer regarding a reasonable production schedule, Plaintiff was unwilling to meaningfully consider an alternative to its extremely expedited timeline, and instead seeks to impose a December 11 completion date

for DOE productions despite DOE's explanation of the substantial review burden that has been complicated by the Government's need to now produce documents from OMB and DOGE. The Government seeks a realistic schedule that will permit it to complete discovery in accordance with the RCFC, while preserving Plaintiff's ability to receive documents continuously as they are reviewed.

## I. DOE Has Undertaken Extensive Electronic Searches and Identified a Substantial Review Date

Plaintiff's assertion that DOE has failed to undertake meaningful searches or has not attempted to identify responsive records is inconsistent with the collection efforts already undertaken. DOE has advised that on October 21, 2026, which was approximately one month after Sublime served its discovery request, DOE approved a comprehensive electronic search memorandum identifying 51 individual custodians and one shared mailbox. We understand that this search covered email, Microsoft Teams messages, and OneDrive records from December 1, 2024 through the date of collection, and included eleven separate Boolean search queries directed to Sublime's cooperative agreement, the preliminary Red/Yellow/Green reviews, the Portfolio Review Process ("PRP"), the technical and financial bases for termination, and the May 2025 termination process. All eleven queries were executed against every identified custodian. The search parameters included terms that would incorporate documents relevant to the broader May 2025 OCED terminations.

Accordingly, DOE's search methodology was not categorically limited to documents mentioning Sublime or to records created before May 2025. The searches were designed to identify both Sublime-specific records and materials concerning the broader review process that Plaintiff contends are relevant. DOE has already commenced rolling production of these searches. Additional productions will follow as responsive, nonprivileged records are reviewed

and cleared. The Government's existing search efforts demonstrate that DOE is not refusing to comply with any discovery obligations, but instead – as discussed in the next section – establish why Plaintiff's proposed December 11 deadline is not feasible pursuant to the comprehensive collection that DOE has pursued.

## II. Plaintiff's Proposed December 11 Deadline Is Not Reasonably Achievable

Plaintiff asks the Court to require DOE to complete production of all DOE responsive documents by December 11, exactly three weeks from today. That deadline does not account for the actual volume of records requiring review or the additional collection obligations discussed at the conference. Although every document may not ultimately require individual review or production, DOE must complete sufficient processing and analysis to identify the responsive, nonprivileged materials within that population. Plaintiff's proposal would effectively require DOE to complete the existing review, undertake additional searches, process any newly identified records, resolve privilege and confidentiality issues, and produce all responsive materials within three weeks.

We understand the Court's interest in expeditious discovery, but the Government respectfully submits that December 11, 2026, is not a realistic deadline. We propose that a schedule that permits continuous production while allowing sufficient time to conduct an accurate and defensible review is a reasonable approach that balances Sublime's asserted need for the documents, the volume of documents implicated in responding to Sublime's requests, and the practical limitations on how quickly documents can be produced.

## III. DOE Is Taking Affirmative Steps to Increase Its Review Capacity

DOE is actively working to obtain contractor support for six additional document reviewers. The contracting, onboarding, training, and technical-access process is expected to

require approximately one to three weeks, particularly given the intervening Thanksgiving holiday. Once operational, the additional reviewers are expected to substantially increase DOE's ability to process the remaining records. Plaintiff's December 11 deadline would expire at approximately the time these additional resources become fully operational, substantially limiting their ability to contribute to completion of the production.

DOE does not intend to suspend discovery pending the onboarding of additional document reviewers. Additional review and productions will be pursued in the intervening period while contracting attorneys are incorporated. The proposed February 26 substantial completion date accounts for the time necessary to bring these additional resources online and coordinate additional productions.

## IV. Good Cause Exists to Modify the Discovery Schedule, and the Court Expressly Recognized That Additional Time May Be Necessary

DOE's substantial efforts to facilitate Sublime's broad range of discovery, in conjunction with the Court's Order directing the expansion of the scope of discovery, provides good cause to amend the case schedule. *See* RCFC 16(b)(4) (permitting modification of a scheduling order for good cause and with the Court's consent).

The Court's November 16, 2026 Order expanded the scope of discovery beyond the Government's original production commitments, including records concerning the broader May 2025 termination process, and records maintained by OMB and DOGE. Though the Court initially indicated a potential preference for completion of DOE's production by December 11, 2026, the Court subsequently recognized that the expanded discovery obligations could necessitate additional time. *See* Nov. 16, 2026 Hr'g Tr. 18:6–9 ("I'm willing to sort of allow you all to talk about what the deadline should be and not necessarily stick to the December 11th deadline for all of the documents to be produced."); *see also id.* at 18:9-12 (indicating that

deadlines should account for additional documents to be produced). The Court also directed plaintiff to consider the repercussions of both seeking expansive discovery, as plaintiff continues to pursue in this joint status report, and the potential effect on the schedule. *Id.* at 19:12-16 ("And, Mr. Jacobson, you should take that into consideration as well, especially since we're talking about, you know, expanding the scope of discovery beyond what the Government had anticipated."). Thus, Plaintiff's continued reliance on the Court's initial reference to December 11 does not take into account the Court's subsequent and more specific discussion of a production schedule after hearing the parties' positions on the respective issues.

The Government's proposed February 26, 2027 substantial-completion date accounts for those obligations and the time necessary to review and produce the documents identified through DOE's searches. DOE will continue making rolling productions in the interim and will provide periodic progress reports. The Government respectfully submits that good cause exists to adopt that schedule and to modify the existing February 9 fact discovery deadline accordingly.

**V. Any OMB and DOGE Productions Require A Separate Reasonable Schedule**

Plaintiff proposes January 8, 2027, as the deadline for completing OMB and DOGE productions, asserting that a search limited to documents containing the term "Sublime" should be straightforward. Plaintiff's assertion is premature, and amounts to no more than an attempt to impose an arbitrary deadline, based upon plaintiff's speculation about the time it will take to collect and produce documents.

During this Monday's status conference, and pursuant to the Court's subsequent Order, ECF No. 33, the Court directed discovery into OMB and DOGE directly. This ordered discovery was largely unanticipated because, as we argued at the status conference, plaintiff had identified no specific information, and no contemporaneous documentation, that ties discovery directly into

these separate agencies to the individual determination to terminate Sublime's award by DOE in May of 2025.

Regardless, pursuant to the Court's Order that has opened this discovery, Defendant has diligently investigated what can be done to accomplish plaintiff's desired short-turnaround productions. To start, we reached out to plaintiff for additional information regarding the representations made during the status conference, including what specific October 2025 termination documents might provide reference points for our inquiries, and how discovery into DOGE may be facilitated, based upon plaintiff's representation that such discovery "is not a big lift at all." Hr'g Tr. 11:6–7. We have additionally contacted several United States entities, including Department of Justice counsel from other matters with relevant knowledge into productions of documents involving OMB and DOGE. Our efforts, and our proposed discovery, is set forth below.

**a. OMB Productions**

Pursuant to the Court's Order, *see* ECF No. 33 ("[Defendant] must also produce documents relevant to the October 2025 terminations that mention Sublime."), we have diligently pursued potential productions from OMB. After several rounds of internal inquiry, we have been able to determine that the ongoing dispute in *State of California v. Wright*, N.D. Cal. No. 26-1417, in which several states challenge the October 2025 termination process, involves a large-scale production of OMB documents that relate to the October 2025 terminations. That case also involves a few impending production deadlines in December of this year. *See California v. Wright*, N.D. Cal. No. 26-1417, ECF No. 129 (which also reflects a roughly 5-month schedule for OMB to produce documents in that case).

Pursuant to our investigation, we propose that the Court set a January 15, 2026 deadline for the United States to produce documents that relate to both the October 2025 terminations and to Sublime, which the United States intends to accomplish as follows. A document review and production of documents related to the October 2025 mass terminations in *State of California v. Wright*, N.D. Cal. No. 26-1417, is underway, led by separate Department of Justice counsel. That case has imminent production deadlines in December of this year, and is currently going through review, including privilege review. As the prospective productions in that matter are finalized and pass review, undersigned counsel can search for documents that mention "Sublime" by name within forthcoming productions, and produce those documents in this case. This method accomplishes the Court's direction to "produce documents relevant to the October 2025 terminations that mention Sublime[,]" ECF No. 33, while preventing work-intensive duplication of discovery efforts by OMB. This also prevents the time-intensive process of creating new document collections, initial responsiveness review, and duplicated privilege review. Further, this method is generous in proportion to Sublime's identified relevance of these materials—*i.e.,* the single document that Sublime has referenced, which is simply a list of a few hundred awards without context, and indicates that Sublime's award termination was "ALREADY PROCESSED."

We have requested a January 15, 2026 production date because documents in *Wright* are to be produced into December, and some time is sought for DOE and undersigned counsel to then perform searches into those documents to find any responsive documents that specifically mention Sublime.

**b. DOGE Productions**

Since the Monday status conference, counsel has diligently investigated what productions from DOGE might be feasible, and plaintiff's reference points for how DOGE productions might be easily accomplished. As a threshold matter, we are still unaware of which DOGE individuals, if any, were involved in the termination decision, outside of those individuals working within DOE that we have identified to plaintiff, and whose documents we intend to produce. Until we identify those individuals, we cannot begin to search DOGE records, and that is putting aside the practical implications of any such productions that have become apparent during our initial inquiry into obtaining productions from DOGE. That is, the production of information may well involve oversight from the Executive Office of the President. We are continuing to investigate this issue. In addition to the practical time needed to facilitate that type of inquiry, such an inquiry is likely to implicate various types of privileges which require time and resources to consider.

We have inquired into the comparator DOGE discovery situation that Sublime's counsel identified during the status conference. In that case, *National Endowment of the Arts*, plaintiffs sought productions from specific DOGE-affiliated personnel, working directly with an agency. Here, we have no similar starting point for searching external DOGE documents, and are already producing DOGE-affiliating documents from individuals working with the agency.

Accordingly, we propose that productions within the "custody of . . . DOGE," ECF No. 33 (cleaned up), be sequenced such that after our production of DOE documents, if plaintiff identifies some part of our productions that reference further DOGE involvement with any issues in this case, we propose to the Court that we aim to expeditiously produce a responsive production of documents from that individual or office, as we currently have no starting place for such a production.

Alternatively, Defendant seeks additional time to investigate the possibility of identifying any individuals at DOGE who were involved and for the general process of producing documents from DOGE. Because this joint status report immediately precedes Thanksgiving week, we seek a reasonable twelve-day period to otherwise continue any investigation into plaintiff's requests, so that we could accurately advise plaintiff or, as appropriate, the Court, what searches we could make to facilitate any productions, if in fact any responsive documents exist.[1]

**VI. Other Issues**

In its status report section, plaintiff presents additional arguments essentially claiming that defendant has refused to comply with the Court's order directing productions after May 2025. Plaintiff's arguments misrepresent Defendant's positions expressed during the meet and confer and fail to address the practicalities of plaintiff's desire to both expedite productions and expand productions—within the same filing.

In a meet and confer yesterday, November 19, 2026, plaintiff represented that the Court had expressly ordered Defendant to produce (essentially unbounded) productions after May 2025, and specifically that the Court had ordered productions related to the ongoing administrative appeal of DOE's decision to terminate Sublime. Defendant questioned that position. Sublime argued that because the Court had issued a decision directing production completion timelines and discovery into DOGE and OMB, the Court had incorporated all the other issues in Sublime's joint status report into its Order, without so saying.

1 We again note our objection to this request for relevance and proportionality, where, in our view, plaintiff established at best, a marginal connection between a broad DOGE collection and the individual termination of Sublime's award, which is addressed within DOE documents.

Nonetheless, and as discussed above, we have collected a substantial amount of documents that postdate the termination period, and in fact much of the difficulty in complying with plaintiff's unreasonable 3-week production schedule stems from our expansive document collection process. As to Sublime's reflection that we have instituted a hard stop on all productions post-dating May 2025, it is simply not true. That said, the expansion of discovery past May 2025 needs to be squared with Sublime's requested three-week discovery deadline, or our alternative, reasonable proposed schedule. Agreement on what can be done within either expedited period of time is dependent upon the scope of document searches that may be agreed upon by the parties.

To that effect, in yesterday's meet and confer, defendant asked plaintiff for any particular search terms that plaintiff would identify that might emphasize the issues that plaintiff believes are salient to the core issues of this case. Plaintiff was unwilling to provide specific terms itself until we identified the search terms that we have already employed. Though plaintiff's unwillingness to propose specific terms only delays productions within its sought three-week discovery period, we are nevertheless quite amenable to sharing our search terms and negotiating practical points of emphasis to accomplish a practical production within Sublime's desired expedited timeframe.[2]

* * *

Accordingly, Defendant respectfully requests that the Court:

1. Reject the proposed December 11, 2026 deadline for completion of DOE's production and amend the February 9, 2026 close of fact discovery, for good cause

2 We again note that Sublime's emphasis on an extremely fast production schedule is difficult to justify in comparison to its own decision to delay bringing this case for a year following the termination of its award.

shown, to allow for the substantial completion of the production of documents from DOE by February 26, 2027;

2. Direct that the production of OMB documents, as specifically represented above, be completed on or before January 15, 2026;
3. Order that additional DOGE documents be produced expeditiously following identification of specific documents or custodians that might have relevant information; or otherwise provide Defendant an additional 12 days to internally inquire into what Sublime searches can be performed into DOGE generally.

Dated: November 20, 2026

Respectfully submitted,

/s/ *Daniel F. Jacobson*
Daniel F. Jacobson
John Robinson
Brian C. Rosen-Shaud
JACOBSON LAWYERS GROUP PLLC
5100 Wisconsin Ave. NW, Suite 301
Washington, DC 20016
Tel: (301) 823-1148
dan@jacobsonlawyersgroup.com

*Counsel for Plaintiff*

JONATHAN D. GUYNN
Acting Assistant Attorney General

PATRICIA M. MCCARTHY
Director

CORINNE A. NIOSI
Assistant Director

*/s/ Matthew D. Lewis*
MATTHEW D. LEWIS
Trial Attorney

Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
(202) 880-6321
matthew.lewis@usdoj.gov

Counsel for Defendant